UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

ALISA HECHT,                                   :
                                                     :
                    Plaintiff,       :
                                                       :
                    -v-              :          10 Civ. 8740 (PAE)
                                                       :
NEXTEL OF NEW YORK, SPRINT        :          <u>OPINION & ORDER</u>
COMMUNICATIONS CORP., and DOES 1 THROUGH :
10 inclusive,                            :
                                                     :
                    Defendants.     :
                                                   :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Defendant Nextel of New York ("Nextel")[1] moves for summary judgment against the

Complaint of *pro se* plaintiff Alisa Hecht ("Hecht"). Hecht alleges: (1) age discrimination, in

violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

("ADEA"); (2) breach of contract; and (3) wrongful termination. For the following reasons, the

motion is granted and judgment will be entered in Nextel's favor.

**I.      Undisputed Facts and Procedural History**

      The parties agree on the underlying facts in this case, as Hecht did not rebut any of the

undisputed facts set out in Nextel's Rule 56.1 statement ("56.1"), and such a failure to respond to

---

[1] Defendant Nextel claims that it was incorrectly sued in the Complaint as "Nextel of New York and Sprint Communications Corp." *See* Dkt. 2. Sprint Communications Corp. and Does 1 through 10, both named as defendants in the Complaint, have never been served in this action, and 120 days have passed since the filing of the Complaint. Accordingly, the Court dismisses without prejudice, pursuant to Federal Rule of Civil Procedure 4(m), the claims against Sprint Communications Corp. and Does 1 through 10, provided that within 20 days of the date of this Order, plaintiff may, for good cause shown, request that the action as to Sprint Communications Corp. and Does 1 through 10 be reinstated. The Court will dismiss the claims against Sprint Communications Corp. and Does 1 through 10 with prejudice in the event that plaintiff makes no such timely application for reinstatement.

an adversary's Rule 56.1 statement constitutes admission of all facts claimed therein.  *See Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 129 n.13 (2d Cir. 2011) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)); *see also* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

### A.  Hecht's Employment with Nextel

Nextel is a wireless company that owns and operates systems to provide wireless communications services to customers.  56.1 ¶ 1.  On September 30, 2002, Hecht, then age 41, started working for Nextel as a Retention Representative at its Elmsford, New York call center.  56.1 ¶ 4.  In 2003, she moved to the Port-Out Prevention ("POP") team, where her job title was Retention Representative/Customer Case Account Services Specialist; she remained at this position until June 11, 2009, when Nextel terminated her employment.  56.1 ¶¶ 5–6 .  Between 2006 and Hecht's termination in 2009, Barbara Santoro was the Account Services Manager in charge of the POP team; all of the approximately 50 members of the POP team reported to her, either directly or indirectly via team supervisors.  56.1 ¶¶ 8, 10–11.

During her employment at Nextel, Hecht received multiple warnings about behavior that the company considered unprofessional.  56.1 ¶ 30.  On August 29, 2003, she received a written warning for using derogatory language toward another employee.  56.1 ¶ 31.  On April 24, 2006, she received another written warning for "argumentative and unprofessional behavior" in her email communications with a co-worker; that same day, she "stormed out of" a meeting regarding her history of unprofessional behavior.  56.1 ¶¶ 32–33.  On May 2, 2006, Hecht

received a written warning for insubordination, in connection with her outburst at the April 24 disciplinary meeting.  56.1 ¶ 34.  And, on June 8, 2008, Hecht received another written warning, this one regarding offensive comments she reportedly made to a co-worker.  56.1 ¶ 37.  Hecht's supervisor warned her on at least one occasion that future unprofessional behavior would result in disciplinary measures, up to and including termination.  56.1 ¶ 38.

On June 11, 2009, the date on which Nextel terminated Hecht's employment, there were 53 employees on the POP team.  56.1 ¶ 56.  Ten were older than age 40, and 19 had worked for Nextel for longer than Hecht had.  56.1 ¶ 56.

**B.  Nextel's Personnel Policies**

When Hecht began working for Nextel, she received a copy of the company's employee guide (the "Guide"), which she read and signed.  56.1 ¶ 14.  The Guide contained a disclaimer section, which provided, *inter alia*:

> Sprint policies, guidelines, practices, handbooks, manuals, programs, plans, video presentations and any other communications are not intended to and do not create a term of employment or employment contract, express or implied, between the employees and Sprint and do not limit or restrict Sprint with respect to the creation or termination of relationships with its employees.

56.1 ¶ 15.  The Guide also stated that "[e]mployment at Sprint is 'at will' and for no definite period of time," and that "Sprint or its employees may terminate employment or alter terms of employment at any time, with or without advance notice and for any reason or no reason."  56.1 ¶ 16.  The Guide further noted that, unless an employee has entered into a signed written employment agreement with the company's chief executive officer or the chief operating officer, that employee is at will.  56.1 ¶ 17.  Consistent with the statements in the Guide, Nextel has a long-standing policy that its retention representatives (the job position that Hecht occupied while at Nextel) are at-will employees.  56.1 ¶ 73.

The Guide also set out Nextel's equal employment opportunity statement.  As relevant here, it stated that the company does not discriminate on the basis of age.  56.1 ¶ 18.  Nextel's code of conduct (the "Code"), which is available on the company's internal employee website and which Hecht received and was familiar with, stated that Nextel handles its employment practices in a "non-discriminatory manner," and that discrimination on the basis of age is prohibited.  56.1 ¶¶ 20–21.

Finally, the Guide contained a non-harassment provision.  It alerted employees that they would be expected to "maintain a professional and respectful work environment, free of unlawful harassment."  56.1 ¶ 19.  The Code contained a similar provision.  It advised Nextel employees that "[e]very employee has a right to a work environment free from harassment," including physical behavior "that creates an intimidating, offensive, abusive or hostile work environment." 56.1 ¶ 22.  Nextel also had a written non-harassment initiative, with which Hecht was familiar, entitled "Not Here!  Not Ever!"  56.1 ¶ 24.  The initiative stated that "[h]arassment is not ever acceptable" at the company, and that harassment included behavior such as "unwelcome touching" and "infringing on personal space."  56.1 ¶¶ 24–25.  The initiative alerted employees that Nextel would investigate reported incidents of harassment; if the company found that an employee had engaged in harassment, disciplinary action, up to and including termination, would result.  56.1 ¶ 26.  Hecht was trained on Nextel's personnel policies, including its anti-harassment policies.  56.1 ¶¶ 27–29.

### C.  Hecht's Termination

In May 2009, Santoro, the supervisor for the POP team, and Linda Carrion, the Human Resources Manager for the Elmsford call center, began an investigation into an allegation that Hecht had "inappropriately touched and/or massaged one or more employees' shoulders and

4

backs while at work." 56.1 ¶¶ 39–40. Santoro and Carrion picked seven employees at random from among the POP team and met with them individually regarding the allegation. 56.1 ¶¶ 41–42. Santoro and Carrion asked each employee whether: (1) he or she had seen any employees inappropriately touching or providing back massages to other employees, and (2) whether he or she had heard any employees making inappropriate verbal comments to other employees. 56.1 ¶ 44. In asking these questions, Santoro and Carrion did not refer to Hecht, or any other employee, by name. 56.1 ¶ 44. Five of the seven employees responded that Hecht had touched them; of those five, four found the touching to be inappropriate and had asked her to stop. 56.1 ¶ 45. Four of the seven employees stated that they had seen Hecht touch other employees. 56.1 ¶ 45.

Santoro and Carrion determined, based on the employees' answers, that Hecht had engaged in harassment in violation of Nextel personnel policies, and that her employment should be terminated. Richard Measley, General Manager of the Elmsford call center and Santoro's boss, agreed. 56.1 ¶¶ 9, 46–48.

On June 11, 2009, Santoro and Carrion met with Hecht, and confronted her with the allegations and the results of their investigation. 56.1 ¶¶ 50–51. Hecht eventually admitted that she had touched employees' shoulders, but denied that anyone had ever responded by asking her to stop. 56.1 ¶ 51. Santoro and Carrion informed Hecht that her employment was being terminated for misconduct. 56.1 ¶ 52.

**D. Procedural History**

On November 19, 2010, Hecht filed the Complaint in this action, challenging her termination. She alleges: (1) violation of the ADEA; (2) breach of contract; and (3) wrongful termination (Dkt. 1). On July 13, 2011, fact discovery closed (Dkt. 11). The Hon. Paul G. Gardephe, to whom this case was previously assigned, set a summary judgment briefing

schedule in which any motion for summary judgment would be filed on September 13, 2011, opposition papers would be filed on October 13, 2011, and reply papers, if any, would be filed on October 27, 2011 (Dkt. 13).  On September 7, 2011, Hecht filed a notice of substitution of attorney, indicating that her attorney was withdrawing and that, until she could find new representation, she would be proceeding *pro se* (Dkts. 14, 15).  This development caused a delay in the summary judgment briefing schedule, and Nextel's motion for summary judgment was filed on October 14, 2011 (Dkt. 18).  On November 11, 2011, this Court granted Hecht an extension to December 12, 2011 to file her opposition papers, based on Hecht's representation that she was seeking new counsel (Dkt. 24).  On December 14, 2011, this Court granted Hecht another extension, this time to January 6, 2012, to file her opposition papers (Dkt. 26).  The Court advised Hecht that, if she continued to encounter difficulty securing new counsel, she would have to file an opposition *pro se* if she wished to counter Nextel's motion.  Hecht never opposed Nextel's motion.

## II.      Legal Standard on a Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  The movant may discharge its burden by demonstrating that there is insufficient evidence to support the opposing party's claim, for which it bears the burden of proof at trial.  *See Celotex*, 477 U.S. at 322–23.

Once the moving party has adduced facts demonstrating that the opposing party's claims cannot be sustained, in order to survive the summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *see also FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) ("[T]he non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citation and internal quotation marks omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering Nextel's motion, the Court is mindful that Hecht is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard "does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## III.   Analysis

### A.  ADEA Claim

Under the ADEA, it is illegal "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a). In analyzing a claim of age discrimination, courts in this circuit employ the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010). Under the *McDonnell Douglas* framework, a plaintiff "bears the initial burden of establishing a prima facie case of discrimination." *Gorzynski*, 596 F.3d at 106 (citing *McDonnell Douglas*, 411 U.S. at 802). "If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski*, 596 F.3d at 106. Pursuant to *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), "a claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.2 (2d Cir. 2009) (citing *Gross*, 557 U.S. at 175–78).

To establish a prima facie case of discrimination under the ADEA, Hecht must demonstrate that: (1) she was within the protected age group; (2) she was qualified for the position; (3) she experienced adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski*, 596 F.3d at 107 (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).

Here, Nextel makes three arguments: First, even assuming *arguendo* that Hecht established the first three of these factors, she cannot establish the fourth, because the circumstances of her termination do not give rise to an inference of discrimination. Second, even if Hecht were able to establish a prima facie case of age discrimination, Nextel has met its burden of proffering a legitimate, non-discriminatory reason for her termination. Third, Hecht

cannot demonstrate that age was the "but-for" cause of her termination, as required by *Gross*. The Court considers each of these arguments in turn.

### 1. Prima Facie Case of Age Discrimination

Hecht's theory is that Nextel terminated her because (as an older and relatively senior employee) she had a relatively high salary, and Nextel wanted to replace her with a younger, lower-salaried worker.  In support of her claim that the circumstances support an inference of age discrimination, Hecht alleges that: (1) she was one of very few people in her department over age 40, and the most senior; (2) her work was scrutinized to a greater degree than others'; and (3) Nextel wanted to rid the company of older, higher-paid workers to save money.  The undisputed facts do not, however, support these claims.

First, Hecht's claim, made at her deposition, that she was one of "only three" POP team employees over age 40 and the most senior member of the team, is refuted by the undisputed facts.  In June 2009, when Hecht was terminated, 10 of the 53 POP team members were 40 or older, and 19 had more experience than Hecht.  56.1 ¶ 56.  In any event, even if Hecht had been one of only a small number of older workers, or even the oldest worker on the POP team, that fact alone would be insufficient to support an inference of age discrimination.  *See Payne v. Malemathew*, No. 09-cv-1634, 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (collecting cases).

Second, it is undisputed that Hecht's work was not scrutinized any less or any more than that of any other POP team member.  In support of her claim that her work was subject to greater scrutiny, Hecht claims that: (1) members of management would inquire if she met her monthly sales quota early in the month; (2) an audit team checked the accuracy of her work; (3) her supervisors spoke with her about following Nextel's policy concerning direct contacts with

internal sales representatives; and (4) Santoro met with Hecht about her work.  56.1 ¶¶ 57, 60, 62, 64.  The undisputed evidence in this case shows, however, that the work of all POP team members was subject to the same audits, inquiries, and oversight.  56.1 ¶¶ 59, 61, 63, 65. Furthermore, even if this were not the case, it does not follow that any intensified scrutiny of Hecht would necessarily be related to her age, let alone that her termination was age-based.

Finally, Hecht does not offer a scintilla of evidence to support her claim that she was terminated to make room for younger, lower-paid workers.  To the contrary, Nextel's compensation scheme for retention representatives, such as Hecht, was largely based on productivity-based commissions, not on age or seniority.  56.1. ¶ 69.  Thus, although Hecht was indeed one of the higher-paid employees on the POP team, her pay was not based on her age, or length of tenure.  56.1 ¶ 68.

In sum, on the record before the Court at summary judgment, no "fair-minded jury" could conclude that Hecht's termination occurred under circumstances giving rise to an inference of discrimination based on age, without engaging in "unsubstantiated speculation."  *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

### 2.  Legitimate and Nondiscriminatory Reason for Termination

Although Hecht's failure to establish a prima facie case of discrimination is itself dispositive, the Court briefly addresses Nextel's alternative arguments.  The Court finds that Nextel has proffered a legitimate and nondiscriminatory reason for Hecht's termination: namely, the investigation by Santoro and Carrion that uncovered Hecht's repeated violations of Nextel's harassment policy.  It is undisputed that Hecht was aware of the policy.  Given the multiple allegations against Hecht by numerous employees, as well as Hecht's history of disciplinary

problems and earlier warnings, Nextel's decision to terminate her employment was wholly reasonable and legitimate.  *See, e.g.*, *Dinkins v. Suffolk Transp. Svc., Inc.*, No. 07-cv-3567, 2010 WL 2816624, at *8 (E.D.N.Y. July 15, 2010) (collecting cases in which history of disciplinary problems and violations of company policy provide legitimate and nondiscriminatory reason for adverse employment action).

### 3.   Age as the "But-For" Cause of Termination

Finally, even if Hecht had established a prima facie case of age discrimination, and even if Nextel were unable to proffer a legitimate and nondiscriminatory reason for her termination, Hecht cannot show, on the summary judgment record, that age "was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it," as required under *Gross*. *Leibowitz*, 584 F.3d at 498 n.2.  Hecht's long history of disciplinary problems, dating back years before her termination and culminating in accusations of inappropriate touching by multiple colleagues, is clearly sufficient to demonstrate that Hecht's age was not the "but-for" cause of her termination.

### B.   Breach of Contract

Under New York law, "'absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'"  *Stamelman v. Fleishman-Hillard, Inc.*, No. 02-cv-8318, 2003 WL 21782645, at *3 (S.D.N.Y. July 31, 2003) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (1987)). Hecht alleges, in her Complaint, that Nextel's personnel policies, disciplinary procedures, and established company policy created an employment contract, under which she could not be terminated absent good cause.  However, on the undisputed facts, Hecht's employment was clearly at-will, and judgment must be granted in favor of Nextel.

In order to rebut the presumption of at-will employment, an employee must show that he "'relie[d] to his detriment on an employer's express written policy limiting its right to discharge.'"  *Gencarelli v. Cablevision Sys. Corp.*, No. 10-cv-4092, 2012 WL 1031441, at *3 (E.D.N.Y. Mar. 27, 2012) (quoting *Chimarev v. TD Waterhouse Investor Svcs., Inc.*, 99 F. App'x 259, 262 (2d Cir. 2004)).  Here, it is undisputed that Nextel had no such policy, and there is no evidence before the Court that Hecht detrimentally relied on any statements made by Nextel.

Furthermore, the disclaimer in the Guide clearly states that Nextel's "policies, guidelines, practices, handbooks, . . . and any other communications . . . do not create a term of employment or employment contract, express or implied."  56.1 ¶ 15.  The Guide also contains an "employment at will" section, which explicitly clarifies that employment is at-will.  56.1 ¶ 16. "'It is well settled under New York law that a disclaimer in an employment handbook indicating that it is not a contract precludes a breach of contract claim.'"  *House v. Wackenhut Svcs., Inc.*, No. 10-cv-9476, 2011 WL 6326100, at *4 (S.D.N.Y. Dec. 16, 2011) (quoting *Chow v. Stride Rite Corp.*, No. 05-cv-2417, 2009 WL 196030, at *11 (S.D.N.Y. Jan. 27, 2009)) (additional citations and internal quotation marks omitted).  This explicit disclaimer makes clear that the Guide and anything stated therein did not constitute an employment contract, and that Hecht's employment with Nextel with indisputably at-will.

## C.  Wrongful Termination and/or Violation of the Covenant of Good Faith and Fair Dealing

Because Hecht's employment was undisputedly at-will, her claims for wrongful termination and/or violation of the covenant of good faith and fair dealing must also fail.  "As the courts within this district have repeatedly recognized, well-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts."  *Thompson v. Bosswick*, No. 10-cv-6647, 2012 WL 626266, at *13 (S.D.N.Y. Feb. 27, 2012)

(citations and internal quotation marks omitted).  New York law holds that "'an obligation to abide by an implied covenant of good faith and fair dealing would be inconsistent with the employer's unfettered right to terminate an at-will employee.'"  *Id.* (quoting *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 443 (S.D.N.Y. 1997)).  To that same end, "[t]he New York Court of Appeals has expressly refused to recognize a cause of action for wrongful termination in the at-will employment context."  *Zaltz v. Wells Fargo Home Mortgage*, No. 08-cv-11225, 2010 WL 3026536, at *5 (S.D.N.Y. Aug. 2, 2010) (citing *Murphy v. Am. Home Prods. Corp.*, 28 N.Y.2d 293, 300–01 (1983)).  Therefore, Hecht lacks a basis to claim either wrongful termination or violation of the covenant of good faith and fair dealing stemming from her termination.

## CONCLUSION

For the foregoing reasons, Nextel's motion for summary judgment is GRANTED.  The Clerk of Court is instructed to terminate the motion pending at docket entry 18, enter judgment in favor of defendant Nextel, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 27, 2012
       New York, New York